IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| GROUPCHATTER, LLC, | § § § § § § § § § § § | CIVIL ACTION 6:15CV863 CONSOLIDATED WITH No. 6:15-cv-886 JRG-JDL JURY DEMANDED |
| Plaintiff, | | |
| v. | | |
| LANDIS + GYR TECHNOLOGIES, LLC, AND LANDIS + GYR | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Landis+Gyr Technologies, LLC ("L+G Technologies") and Landis+Gyr Technology, Inc. ("L+G Technology") (collectively "L+G") Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a). (Doc. No. 17.) Plaintiff Groupchatter LLC ("Groupchatter") filed a response (Doc. No. 22) to which L+G filed a reply (Doc. No. 23), and Groupchatter filed a sur-reply (Doc. No. 27). In addition, in light of an amended complaint filed by Groupchatter, L+G filed a sur-sur-reply. (Doc. No. 30.) Upon consideration of the parties' arguments, the Court **GRANTS** L+G's Motion to Transfer Venue (Doc. No. 17).

## BACKGROUND

Groupchatter is a Texas limited liability company with its headquarters and principal place of business at 1400 Preston Road., Suite 475, Plano, Texas 75093. (Doc. No. 24, at ¶ 1.) Groupchatter is the owner of United States Patent Nos. 7,969,959, 8,199,740, 8,588,207, and 9,014,659 (the "patents-in-suit"). (Doc. No. 22-3, Declaration of David Pridham at ¶ 7) ("Pridham Decl.").)

1

Defendant L+G Technology is a Delaware corporation with its headquarters and principal place of business in Alpharetta, Georgia at 30000 Mill Creek Avenue. (Doc. No. 19-1, Declaration of James Davis, at ¶ 4) ("Davis Decl.").) L+G Technology "designs, develops, markets, and sells the accused Gridstream system (including the accused Command Center software) and RF-enabled meters." *Id.* Defendant L+G Technologies is a Minnesota limited liability company with its headquarters in Alpharetta, Georgia at 30000 Mill Creek Avenue, and its principal place of business in Pequot Lakes, Minnesota. *Id.* at ¶ 5. L+G Technologies "designs, develops, markets, and sells the accused Gridstream system (including the accused Command Center software), small RF networks, and power line carrier (PLC) meters." *Id.* L+G has approximately 52 employees in Alpharetta, Georgia who are responsible for "the research, design, and development of the accused Gridstream Command Center software" and "the research, design, and development of the firmware for the RF modules and the RF communication capabilities of the Gridstream meters." *Id.* at ¶¶ 7, 11.

L+G specifically identifies three employees who have knowledge regarding the accused Gridstream Command Center and work at L+G's Alpharetta headquarters. *Id.* at ¶ 6. L+G further specifically identifies two employees who have knowledge regarding the firmware for the accused meters and work at L+G's Alpharetta headquarters. *Id.* at ¶ 10. L+G also states that additional employees with relevant knowledge are located in Noida, India and Pequot Lakes, Minnesota. *Id.* at ¶¶ 8, 9, 12, 13. Finally, L+G specifically identifies four employees with knowledge concerning the sales and marketing of the accused system who work at L+G's Alpharetta headquarters. *Id.* at ¶ 15.

L+G's documents related to the accused products, such as documents related to research, design, and development of the accused Gridstream system, including relevant source code, are

located in the Northern District of Georgia. *Id.* at ¶ 14. L+G's documents associated with the sale of the accused Gridstream system are located in Alpharetta, Georgia, and documents related to product marketing are located in Alpharetta, Georgia, and Pequot Lakes, Minnesota. *Id.* at ¶¶ 16, 17.

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)

3

("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

## DISCUSSION

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I,* 371 F.3d at 203. In a patent infringement action, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In this case, Groupchatter does not contest that L+G conducts business within the Northern District of Georgia and transfer is permissible under § 1404.

### I. The Private Interest Factors

*(a) The Relative Ease of Access to Sources of Proof*

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. The Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringer. *In re Genentech,* 566 F.3d 1338, 1345 (Fed. Cir. 2009). As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). To meet its burden, L+G must identify its sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties. *In re Apple,* 743 F.3d at 1379; *see also Invitrogen v. Gen. Elec. Co.,* No. 6:08–CV–113, 2009 WL 331889 at *3 (E.D. Tex. Feb. 9,

2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties").

Through its declarations, L+G maintains that employees with relevant knowledge regarding the accused products are located in the Northern District of Georgia. (Davis Decl. at ¶¶ 6, 10, 15.) L+G specifically identifies the following nine employees with relevant information located in Alpharetta, Georgia:

- Darrell Swope, Global Head of Architecture, knowledge about the research, design, and development of the accused Gridstream Command Center software;

- David Nesfeder, Head of Head End System Software, knowledge about the research, design, and development of the accused Gridstream Command Center software;

- James Davis, Head of Solutions Architecture, knowledge about the research, design, and development of the accused Gridstream Command Center software;

- Samar Soliman, Head of Communication Devices, knowledge about the research, design, and development of the firmware for the RF modules and RF communication capabilities of the meters in the accused Gridstream system;

- Stephen Chasko, Global Architect for Devices, knowledge about the research, design, and development of the firmware for the RF modules and RF communication capabilities of the meters in the accused Gridstream system;

- Jay Evensen, VP of Commercial Operations, knowledge concerning the sales support processes for the accused Gridstream system;

- Gina Garner, VP of West Region, knowledge concerning the sales of the accused Gridstream system;

- Eric Kuchinski, Director of Strategic Business Planning, knowledge concerning the marketing, planning, and competitive analysis for the accused Gridstream system; and

- Robert Millar, Finance Director, knowledge concerning the financial records relating to the accused Gridstream system.

*Id.* at ¶¶ 6, 10, 15.

As to its documents, L+G contends that documents related to the accused products, such as documents related to research, design, and development of the accused Gridstream system, and source code are located in the Northern District of Georgia. Davis Decl. at ¶ 14. L+G also contends that documents associated with the sale of the accused Gridstream system are located in Alpharetta, Georgia, and documents related to product marketing are located in Alpharetta, Georgia, and Pequot Lakes, Minnesota. *Id.* at ¶¶ 16, 17.

Groupchatter does not specifically identify any of its documents or employees located in this District. In its briefing, Groupchatter contends that documents related to the sale of the patents are located in this District at its office. (Doc. No. 22, at 4.) However, Groupchatter's CEO, whose declaration is cited in support, states as follows:

> I understand that documents and tangible items relating to the Patents-in-Suit have been transferred to GroupChatter from Critical Response Systems, the inventor and previous owner of the Patents-in-Suit, and are currently being processed for production by counsel for GroupChatter. Once processed, such documents and tangible items will be maintained in Plano, Texas.

(Pridham Decl. at ¶ 8.)

As Groupchatter's CEO states, documents have been transferred to Groupchatter's offices in this District for production by counsel in this matter. *Id.* Documents that are transported to this District for litigation purposes (*e.g.* those documents Groupchatter's CEO has described in his declaration) cannot be considered. *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009). As between the parties to this suit, Groupchatter only points to the strong and particularized presence of L+G's accused system in Texas. (Doc. No. 22, at 5–7.) But the sale of the accused products or deployment of the accused system in Texas and in this District does not outweigh the substantial evidence provided by L+G regarding the relevant sources of

proof in the Northern District of Georgia where the accused system was designed and developed. *In re TOA Techs., Inc.,* 543 F. App'x. 1006, 1009–10 (Fed. Cir. 2013). Groupchatter also maintains that L+G has a manufacturing facility 5 miles across the border in Mexico. (Doc. No. 22, at 9.) However, the relevance of this factory's proximity to Texas to this litigation is unclear. Groupchatter has not identified any specific relevant information that would be stored at that factory.

Finally, Groupchatter also maintains that several third parties have relevant information and are located in Texas. Specifically, Groupchatter identifies several energy companies that are working with L+G to deploy smart meters in Texas, including Oncor, AEP-Texas, Austin Energy, and CPS Energy. (Doc. No. 22, at 5.) However, the relevance of these customers to this litigation based on Groupchatter's allegations is not clear. Groupchatter asserts simply that maintaining this action in Texas will aid in its access and its expert's access to the accused systems. (Doc. No. 22, at 6.) Yet the presence of these systems in Texas bears little on the consideration of convenience for trial. This is particularly true where, as here, the systems are sold and implemented nationwide.

Groupchatter also identifies Consert, Inc. ("Consert"), which is partnered with L+G and based in San Antonio, Texas, and Toshiba International Company ("TIC"), a L+G sister company that is headquartered in Texas. (Doc. No. 22, at 7–8.) Groupchatter identifies two individuals at Consert who are publicly listed as responsible for answering technical questions and who are located in San Antonio, Texas. (Doc. No. 27, at 4.) Other than those two individuals, Groupchatter does little to connect the relevance of these entities to this litigation. Indeed, L+G maintains that TIC offers products in the energy industry that are unrelated to this

accused system. (Doc. No. 23, at 2.) L+G further maintains that any information Consert has will be duplicative and cumulative of that which is located in the Northern District of Georgia. *Id.*

Here, L+G has specifically identified the location of its sources of proof in the Northern District of Georgia, including specific employees with relevant knowledge and specific documents related to the accused products. Groupchatter has not located any documents or employees in this District. Groupchatter does identify some third parties who may have relevant information to this litigation, though that relevance is not clearly identified. Regardless, the Court must also acknowledge that "the bulk of relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345. Groupchatter devotes a great deal of its argument asserting that documents will be produced electronically, which it contends diminishes the weight of hard copy documents located in Georgia. But similarly, the electronic transmission of documents cannot diminish the overwhelming presence of hard copy documents in a single location. *Id.* at 1346.

Again, the Court must acknowledge in this instance that the bulk of documents will come from the accused infringer; particularly, where, as here, the accused infringer has identified specific documents located at its headquarters. Here, Groupchatter has not identified any documents or employees in this District. Thus, considering the number of witnesses specifically identified in the Northern District of Georgia, as well as the specific categories of documents identified by L+G, the Court finds this factor weighs strongly in favor of transfer.

*(b)The Availability of the Compulsory Process to Secure the Attendance of Witnesses*

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *See In re Volkswagen II*, 545 F.3d at

316. The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter.*, No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D.Tex Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *See also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

L+G identifies two of the named inventors of the patents-in-suit who work for Critical Response Systems, which is located in the Northern District of Georgia. (Doc. No. 17, at 10.) L+G also identifies IPinvestments Group in the Northern District of Georgia, which is the company that brokered the sale of the patents-in-suit. *Id.* Groupchatter has submitted declarations from the named inventors identified by L+G stating that they would be willing to travel from Georgia to Texas for trial and not seek reimbursement. (Doc. No. 22-2.) However, considering these declarations and the willingness of these witnesses is at best speculative for the Court, as the fact remains that both inventors are third party individuals who are located outside of this District in the Northern District of Georgia.

Groupchatter identifies several of the third parties it previously identified, including Oncor, AEP Texas, CPS Energy, Consert, Inc., and Denton County Electric Cooperative, Inc. (Doc. No. 22, at 11.) These identifications by Groupchatter cannot weigh heavily in the Court's analysis. First, Groupchatter has not specifically identified any individuals or specific documents it would seek to compel and where they would be located. Second, because some of these companies are not located within the Eastern District of Texas, and are more than 100 miles away, the Court cannot perform an adequate analysis under Fed. R. Civ. P. 45(c).[1]

---

[1] For example, any witnesses further than 100 miles away which would require a showing that they "would not incur substantial expense" in order to be compelled to trial. Fed. R. Civ. P. 45(c)(1)(B)(ii).

9

Weighing the third-party corporations located in Texas, against the two specifically identified third-party witnesses and third-party corporation located in Georgia, the Court finds this factor weighs in favor of transfer.

*(c) The Cost of Attendance for Willing Witnesses*

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted).

As discussed, L+G has specifically identified nine employees as willing witnesses with relevant knowledge of the accused products who are located in the Northern District of Georgia. (Davis Decl. at ¶¶ 6, 10, 15.) L+G has also identified two the named inventors of the patents-in-suit who are located in the Northern District of Georgia. (Doc. No. 17, at 10.)

Groupchatter has not identified any willing witnesses located in this District. As discussed above, Groupchatter only specifically identifies the two named inventors as willing witnesses, but those witnesses are located in Georgia. (Doc. No. 22, at 11–12.) In addition, Groupchatter has only generally identified several third-party companies located in Texas.

In sum, L+G has identified nine willing witnesses in the Northern District of Georgia as well as two of the named inventors of the patents-in-suit, and Groupchatter has not named any willing witnesses in this District and only generally named third party companies located in Texas. Thus, on balance, the Court finds this factor weighs in favor of transfer.

10

*(d) Other Practical Problems*

*(i) Judicial Economy*

Although judicial economy is not among the list of the enumerated factors, it can be a consideration when determining whether a transfer is in the interest of justice. *Volkswagen II*, 565 F.2d at 1351. Groupchatter contends that judicial economy weighs against transfer because there are three other cases pending in this District involving the same patents: 6:15-cv-863; 6:15-cv-900; and 6:15-cv-975. (Doc. No. 22, at 12.) However, only one of these cases was pending at the time the instant action was filed. *See In re EMC Corp.*, 501 F. App'x. 973, 976 (Fed. Cir. 2013) ("a district court may properly consider any judicial economy benefits which would have been apparent at the time the suit was filed"). That case was in its infancy at the time the instant action was filed. L+G contends that as a result of the co-pending cases being in their infancy, this factor is neutral. (Doc. No. 17, at 12.) The Court agrees. Because there was only one co-pending suit in this District that was in its infancy at the time the instant action was filed, the Court finds the benefits of judicial economy were minimal. Accordingly, this factor is neutral.

**II.    The Public Interest Factors**

The parties agree that the public interest factors are neutral, aside from the administrative difficulties flowing from court congestion and local interest considerations.

*(a) The Administrative Difficulties Flowing From Court Congestion*

This factor is the most speculative, and cannot alone outweigh other factors. *Genentech*, 566 F.3d at 1347. However, the speed with which a case may get to trial is relevant under the § 1404(a) analysis. *Id.* Both parties agree that this factor weighs slightly against transfer because the time to trial in the Northern District of Georgia is longer. (Doc. No. 17, at 12; Doc. No. 22, at 13.) However, as the Court has repeatedly found in the past, the parties' reliance on general civil

statistics provides the Court with little guidance as to the speed with which patent cases reach trial. *See West Coast Trends, Inc.,* No. 6:10-cv-688, 2011 WL 5117850, at *4 (E.D. Tex., Oct. 27, 2011) ("[a]s is common with this factor, the parties cite to incongruous statistics which prevents the Court from drawing a meaningful conclusion as to court congestion."). Accordingly, due to its speculative nature, the Court finds this factor neutral.

*(b) The Local Interest in Having Localized Interests Decided at Home*

L+G contends that the Northern District of Georgia has a strong local interest in this case because the research, design, and development of the accused Gridstream system took place there. (Doc. No. 17, at 13.) Similarly, L+G contends that many of the employees who were involved in the research and design tasks are located in the Northern District of Georgia and conducted that work there. *Id.* L+G also maintains that because two of the named inventors are located in the Northern District of Georgia, a number of significant activities related to the conception and reduction to practice of the invention occurred there. *Id.* Groupchatter maintains that this Court has a local interest in resolving this action because of the co-pending actions filed here. (Doc. No. 22, at 14.) Groupchatter does not identify any local interest this District has in this action. Groupchatter's argument regarding the existence of co-pending related actions is misplaced. This factor is not to consider whether this Court will gain benefits of judicial efficiency, but whether this District has a local interest.

Because L+G has identified several individuals whose work relates to the accused technology and who are located in the Northern District of Georgia, the Court finds that the Northern District of Georgia has a local interest in the outcome of the litigation. *See Hoffman-La Roche*, 587 F.3d at 1336 ("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district

and who presumably conduct business in that community."); *Eon Corp. IP Holdings, LLC v. Sensus, USA Inc.*, No. 2:10-cv-448, 2012 WL 122562, at *5 (E.D. Tex. Jan. 9, 2012). Groupchatter has not identified any local interest this District has. Thus, on balance, this factor weighs in favor of transfer because L+G has specifically identified individuals whose work and reputation are being called into question by allegations of infringement.

*(d) The Remaining Public Interest Factors*

The remaining public interest factors are neutral.

## CONCLUSION

Upon balancing the venue factors, the Court finds that the Northern District of Georgia is a clearly more convenient forum. Here, the location of sources of proof weigh strongly in favor of transfer, while the convenience of willing witnesses, the availability of the compulsory process, and the local interest weigh in favor of transfer. All other factors are neutral. Accordingly, the Court **GRANTS** L+G's Motion to Transfer (Doc. No. 17).

**So ORDERED and SIGNED this 11th day of February, 2016.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE