IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| GROUPCHATTER, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ITRON, INC. <br><br> Defendant. | 6:15CV863 <br> CONSOLIDATED WITH <br> No. 6:15-cv-900 JRG-JDL <br><br> JURY DEMANDED |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Itron, Inc.'s ("Itron") Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a). (Doc. No. 19.) Plaintiff Groupchatter LLC ("Groupchatter") filed a response (Doc. No. 24) to which Itron filed a reply (Doc. No. 23), and Groupchatter filed a sur-reply (Doc. No. 27). Upon consideration of the parties' arguments, the Court **GRANTS** Itron's Motion to Transfer Venue (Doc. No. 19).

### BACKGROUND

Groupchatter is a Texas limited liability company with its headquarters and principal place of business at 1400 Preston Road., Suite 475, Plano, Texas 75093. (Doc. No. 1, at ¶ 1.) Groupchatter is the owner of United States Patent Nos. 7,969,959, 8,199,740, 8,588,207, and 9,014,659 (the "patents-in-suit"). (Doc. No. 24-2, Declaration of David Pridham at ¶ 9) ("Pridham Decl.").)

Defendant Itron is Washington corporation with a principal place of business in Liberty Lake, Washington. (Doc. No. 19-1, Declaration of Simon Pontin, at ¶ 3) ("Pontin Decl.").) Itron develops, designs, and manufactures the accused OpenWay system. *Id.* at ¶ 5. Itron maintains

that employees knowledgeable about the accused OpenWay products are based in West Union, South Carolina, where Itron maintains a large facility for research, design, development, and manufacturing. *Id.* at ¶ 4. Itron employs over 600 employees in Oconee County, South Carolina, including approximately 40 engineers responsible for the design, development, and manufacturing of the accused OpenWay system, as well as other employees with knowledge of marketing, sales, and pricing for OpenWay products. *Id.* at ¶¶ 4, 5.

Itron specifically identifies sixteen employees who have knowledge regarding the accused OpenWay products and work at Itron's South Carolina facility. *Id.* at ¶ 5. Itron further maintains that it has employees in Liberty Lake, Washington; Raleigh, North Carolina; and Paris, France with knowledge about the OpenWay products. *Id.* at ¶ 7.

Itron's documents related to the accused products, such as documents related to research, design, and functionality of the accused OpenWay products, are located in Itron's Oconee facility in South Carolina. *Id.* at ¶ 8. Itron further identifies several customers and partners it does business with in the Northern District of Georgia. *Id.* at ¶ 10.

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda*

*Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

## DISCUSSION

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I,* 371 F.3d at 203. In a patent infringement action, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In this case, Groupchatter does not contest that Itron conducts business within the Northern District of Georgia and transfer is permissible under § 1404.

**I.     The Private Interest Factors**

*(a) The Relative Ease of Access to Sources of Proof*

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. The Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringer. *In re Genentech,* 566 F.3d 1338, 1345 (Fed. Cir. 2009). As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). To meet its burden, Itron must identify its sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties. *In re Apple,* 743 F.3d at 1379; *see also Invitrogen v. Gen. Elec. Co.,* No. 6:08–CV–113, 2009 WL 331889 at *3 (E.D. Tex. Feb. 9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties").

Through its declarations, Itron maintains that employees with relevant knowledge regarding the accused products are located in Oconee County, South Carolina, which borders the Northern District of Georgia. (Pontin Decl. at ¶ 5.) Itron specifically identifies sixteen employees located in Oconee County, South Carolina. *Id.* As to its documents, Itron contends that documents related to the accused products, such as documents related to research, design, functionality, and manufacturing of the accused OpenWay products are located at its facility in South Carolina. *Id.* at ¶ 8.

Groupchatter does not specifically identify any documents or employees located in this District. However, Groupchatter's CEO, whose declaration is cited in support, states as follows:

> I understand that documents and tangible items relating to the Patents-in-Suit have been transferred to GroupChatter from Critical Response Systems, the

4

> inventor and previous owner of the Patents-in-Suit, and are currently being processed for production by counsel for GroupChatter. Once processed, such documents and tangible items will be maintained in Plano, Texas.

(Pridham Decl. at ¶ 10.)

As Groupchatter's CEO states, documents have been transferred to Groupchatter's offices in this District for production by counsel in this matter. *Id.* Documents that are transported to a District for litigation purposes (*e.g.* those documents Groupchatter's CEO has described in his declaration) cannot be considered in a § 1404 analysis. *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009).

As between the parties to this suit, Groupchatter identifies ten Itron employees who are located in Texas and who have information regarding the OpenWay products. (Doc. No. 24, at 6–8.) Itron disputes the connection of these employees to this case, stating they have only superficial or high-level knowledge regarding the OpenWay products. (Doc. No. 30, at 3.) Groupchatter disputes the location of Itron's relevant documents, arguing that its documents are likely at its headquarters in Liberty Lake, Washington. (Doc. No. 24, at 10–11.)

Finally, Groupchatter also maintains that several third parties have relevant information and are located in Texas. Specifically, Groupchatter also identifies four of Itron's customers, including CenterPoint who has a lab in Houston, Texas to demonstrate the accused products. (Doc. No. 24, at 8.) Groupchatter specifically identifies three individuals at CenterPoint in Houston, Texas, who have knowledge of the accused OpenWay meters, one individual at OpenWay North America located in Houston, Texas, and one individual at North America/Electricity, located in Dallas, Texas. (Doc. No. 24, at 6–9.)

Itron has specifically identified the location of its sources of proof in South Carolina, including specific employees with relevant knowledge and specific documents related to the

5

accused products. Groupchatter has no documents or employees in this District. Groupchatter does identify third parties who may have relevant information to this litigation. Regardless, the Court must acknowledge that "the bulk of relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345. Groupchatter devotes a great deal of its argument to questioning the veracity of Itron's statements about the location of its sources of proof. The Court acknowledges that, to some extent, Itron likely has relevant documents and employees at its Washington headquarters, but there is no reason to believe the statements contained in Mr. Pontin's declaration under oath are false as they pertain to the location of sources of proof for the accused OpenWay products in this case.

Perhaps most important in the analysis of this factor is Groupchatter's failure to identify any of its own documents or employees in this District. Ultimately, the parties present disputes regarding the location of Itron's sources of proof, some of which are in South Carolina, some of which may be in Texas, and some of which may be in Washington. However, considering the number of witnesses specifically identified in a location that borders the Northern District of Georgia, as well as the specific categories of documents identified by Itron in close proximity to that district, the Court finds this factor weighs slightly in favor of transfer.

*(b)The Availability of the Compulsory Process to Secure the Attendance of Witnesses*

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *See In re Volkswagen II*, 545 F.3d at 316. The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter.*, No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010)

6

(stating that the Court will not base its conclusion on unidentified witnesses); *See also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

Itron identifies two of the named inventors of the patents-in-suit who work for Critical Response Systems, which is located in the Northern District of Georgia. (Doc. No. 19, at 9.) Itron also identifies IPinvestments Group in the Northern District of Georgia, which is the company that brokered the sale of the patents-in-suit. *Id.* Itron also identifies eleven companies in the Northern District of Georgia who are customers or partners of Itron. (Pontin Decl. at ¶ 10.) Groupchatter has submitted declarations from the named inventors identified by Itron stating that they would be willing to travel from Georgia to Texas for trial and not seek reimbursement. (Doc. Nos. 24-32; 24-33.) However, the willingness of these witnesses to travel to Texas carries little weight, as the fact remains that both inventors are located in the Northern District of Georgia, the district to which transfer is sought.

Groupchatter identifies several of the third parties it previously identified. First, Groupchatter lists the Itron employees it previously identified. (Doc. No. 24, at 12–13.) But these are employees of Itron, not third parties who would need to compelled to trial. Groupchatter has only named three individuals at Centerpoint who may have knowledge regarding the accused OpenWay products, one individual at OpenWay North America, and one individual at North America/Electricity, all of whom are outside this District's subpoena power. (Doc. No. 24, at 6–9.) Groupchatter again identifies Itron customers/affiliates in Texas including City of Newton, City of Llano, and the El Paso Electric Company that are likewise outside this District's subpoena power. (Doc. No. 24, at 13.) Moreover, as to the individuals identified at Centerpoint, their relevance to the litigation is unclear. Groupchatter has only stated that they are

7

familiar with certain aspects of the OpenWay products, but it is unclear whether their attendance will be necessary or requested for trial or even deposition. Similarly, while Groupchatter has identified two other individuals with more specificity as to their knowledge, their relevance to trial is likewise not clear. Without any explanation as to a particular third party witness's relevance to trial, analysis under Fed. R. Civ. P. 45 is purely speculative.

Because the record contains identified witnesses subject to the Northern District of Georgia's subpoena power while there are none specifically identified by location and relevance who are subject to the subpoena power of this Court, this factor weighs in favor of transfer.

*(c) The Cost of Attendance for Willing Witnesses*

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted).

As discussed, Itron has specifically identified sixteen employees as willing witnesses with relevant knowledge of the accused products who are located in Oconee County South Carolina, on the border of the Northern District of Georgia. (Pontin Decl. at ¶ 5.) Itron has also identified two the named inventors of the patents-in-suit who are located in the Northern District of Georgia, as well as several customers and business partners who are located in that district. (Doc. No. 19, at 9; Pontin Decl. at ¶ 10.)

Groupchatter has not identified any willing witnesses located in this District. As discussed above, Groupchatter identifies ten Itron employees who are located in Texas, one of whom may be located in this District, but whose connection to this litigation is disputed by Itron. In addition, Groupchatter has only generally identified several third-party companies located in Texas and a few individuals who work at those companies, but whose relevance to the litigation is not clear.

In sum, Itron has identified sixteen willing witnesses in Oconee County South Carolina on border of the Northern District of Georgia as well as two of the named inventors of the patents-in-suit located in the Northern District of Georgia. Groupchatter has not named any of its own willing witnesses in this District and instead names Itron employees in Texas whose relevance to this litigation is disputed by Itron. In addition, Groupchatter generally named third party companies located in Texas, as well as five individuals. Similarly, Itron generally identified third party customers in the Northern District of Georgia, but whose relevance to this litigation is not clear. Affording the proper weight to these identifications, the Court finds this factor weighs in favor of transfer.

*(d) Other Practical Problems*

*(i) Judicial Economy*

Although judicial economy is not among the list of the enumerated factors, it can be a consideration when determining whether a transfer is in the interest of justice. *Volkswagen II*, 565 F.2d at 1351. Groupchatter contends that judicial economy weighs against transfer because this Court is familiar with Itron's products from other cases, and there is a co-pending case in this District that was pending at the time this case was filed: 6:15-cv-863. (Doc. No. 24, at 14.) *See In re EMC Corp.*, 501 F. App'x. 973, 976 (Fed. Cir. 2013) ("a district court may properly

consider any judicial economy benefits which would have been apparent at the time the suit was filed"). The fact that the Court has previously dealt with Itron products involving different patents has little relevance to the infringement allegations here. Additionally, because there was only one co-pending suit in this District that was in its infancy at the time the instant action was filed, the Court finds minimal benefits of judicial economy. Accordingly, this factor is neutral.

## II.   The Public Interest Factors

The parties agree that the public interest factors are neutral, aside from the administrative difficulties flowing from court congestion and local interest considerations.

*(a) The Administrative Difficulties Flowing From Court Congestion*

This factor is the most speculative, and cannot alone outweigh other factors. *Genentech*, 566 F.3d at 1347. However, the speed with which a case may get to trial is relevant under the § 1404(a) analysis. *Id.* Itron maintains that this factor is neutral because the median time to trial in the Northern District of Georgia is only slightly longer than this District. (Doc. No. 19, at 12.) Groupchatter maintains that because a *Markman* hearing and trial date have already been set in this District, this factor weighs against transfer. (Doc. No. 24, at 15.)  But such an argument is true of almost any case subject to a motion to transfer. What Groupchatter effectively asks the Court to do is to weigh this factor in its favor because there is potential delay in transferring this case. The Court declines to do so. Accordingly, due to its speculative nature, the Court finds this factor neutral.

*(b) The Local Interest in Having Localized Interests Decided at Home*

Itron contends that the Northern District of Georgia has a strong local interest in this case because the research, design, and development of the accused OpenWay system took place near the Northern District of Georgia. (Doc. No. 19, at 12–13.)  Similarly, Itron contends that many of

the employees who were involved in the research and design tasks are located near the Northern District of Georgia. *Id.* at 13. Itron also maintains that because two of the named inventors are located in the Northern District of Georgia, a number of significant activities related to the conception and reduction to practice of the invention occurred there. *Id.* at 12. Groupchatter maintains that Itron's true local interest is in its headquarters in Washington. Groupchatter does not identify any local interest this District has in this action.

Because Itron has identified at least two individuals whose work relates to the patents-in-suit and who are located in the Northern District of Georgia, as well as several others who are near that district, the Court finds that the Northern District of Georgia has a local interest in the outcome of the litigation. *See Hoffman-La Roche*, 587 F.3d at 1336 ("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."); *Eon Corp. IP Holdings, LLC v. Sensus, USA Inc.*, No. 2:10-cv-448, 2012 WL 122562, at *5 (E.D. Tex. Jan. 9, 2012). Groupchatter has not identified any local interest this District has. Thus, on balance, this factor weighs in favor of transfer because Itron has specifically identified individuals whose work and reputation are being called into question by the allegations in this action.

*(d) The Remaining Public Interest Factors*

The remaining public interest factors are neutral.

## CONCLUSION

Upon balancing the venue factors, the Court finds that the Northern District of Georgia is a clearly more convenient forum. The location of sources of proof weigh slightly in favor of transfer, while the convenience of willing witnesses, the availability of the compulsory process,

and the local interest weigh in favor of transfer. All other factors are neutral. Accordingly, the Court **GRANTS** Itron's Motion to Transfer (Doc. No. 19).

**So ORDERED and SIGNED this 12th day of May, 2016.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE